UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT RHODES,

                        Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        07-CV-471S

ROBERT TEVENS, STEVE MACMARTIN,
and DONALD MANIA,

                        Defendants.

## I.  INTRODUCTION

Plaintiff Robert Rhodes, a former Department of Homeland Security ("DHS"),

Customs and Border Protection ("CBP") Officer, commenced this action on July 23, 2007,

under the provisions of the Fourth and Fifth Amendments to the Constitution and pursuant

to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388

(1971). (Docket No. 1.)  Plaintiff filed an Amended Complaint on February 15, 2008,

alleging six causes of action against Defendants Robert Tevens ("Tevens"), Steven

MacMartin ("MacMartin"), Donald Mania ("Mania") (collectively referred to herein as

"Defendants") for their involvement in the investigation and subsequent prosecution of

Plaintiff following an incident at the border with a Chinese national. (Docket No. 26.)

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Amended

Complaint pursuant to Rule 12(b)(6), and alternatively, Rule 56 of the Federal Rules of Civil

Procedure. (Docket No. 33.)[1] Having considered the parties' written submissions and the

---

[1] In support of their motion, Defendants filed a memorandum of law, a Statement Of Material Facts As To Which There Is No Issue To Be Tried with appendix, and a reply memorandum of law (Docket Nos. 33-36, 50.) Plaintiff has filed a memorandum of law, affidavits, an attorney affirmation, and a Statement of Material Facts with appendix, in opposition to Defendant's motion. (Docket Nos. 42-43, 45.)

applicable law, this Court will grant Defendants' motion and dismiss Plaintiff's Amended Complaint.

## II. BACKGROUND

### A.    Facts

The following facts are not in dispute.[2]

On July 21, 2004, Plaintiff was involved in an incident at the Rainbow Bridge, Niagara Falls, New York, where he was on duty at the bus and pedestrian inspection terminal. Allegations were made by Supervisory Customs and Border Protection Officer ("SCBPO") Martin Mahady to the DHS Immigration and Customs Enforcement ("ICE") Resident Agent in Charge, Office of Professional Responsibility ("OPR"), that on that date Plaintiff was involved in an incident with a Chinese national, Zhao Yan ("Zhao") wherein Plaintiff administered pepper spray to subdue Zhao and may have struck her in the head while restraining her.

The following day, OPR Senior Special Agents ("SSAs") Mania and MacMartin began their investigation of the allegations of excessive force by Plaintiff against Zhao. Mania and MacMartin interviewed several witnesses to the incident involving Plaintiff and Zhao, and took photographs of Zhao's injuries. Afterward, Mania and MacMartin contacted the United State's Attorney's Office, Western District of New York, to inform the duty attorney of their investigation.

On July 22, 2004, at approximately 6:30 p.m., a warrant for the search of Plaintiff's person was signed by Magistrate Judge Hugh B. Scott, Western District of New York.

---

[2] Plaintiff did not specifically controvert the Defendant's Statement of Material Facts. (Docket No. 42-69.) Accordingly, the Court deems those facts admitted pursuant to Loc. R. Civ. P. 56(a)(2)

Approximately two hours later, Plaintiff was arrested for a violation of 18 U.S.C. § 242, Deprivation of Rights under Color of Law.[3] Plaintiff's arrest was based on upon a criminal complaint and a warrant for arrest signed by Magistrate Judge Scott. MacMartin submitted an affidavit in support of the warrant for arrest and criminal complaint.

During the morning hours of July 23, 2004, the warrant for the search of Plaintiff's person was executed, and photographs were taken of Plaintiff.

On July 27, 2004, a federal Grand Jury convened and indicted Plaintiff on August 11, 2004, charging him with a one-count violation of 18 U.S.C. § 242, Deprivation of Rights under Color of Law.  Plaintiff was arraigned on August 13, 2004, and pleaded not guilty to the charge.

A jury was seated to hear evidence in the case of <u>United States v. Rhodes</u>, 04-CR-196 (W.D.N.Y) on August 18, 2005. On September 8, 2005, the jury returned a verdict of not guilty.

Following the not guilty verdict, DHS/ICE OPR conducted an internal security investigation to determine whether the misconduct allegations made against Plaintiff were substantiated. Specifically, whether Plaintiff used unreasonable force while detaining Zhao and whether he made false material statements to CBP or to ICE on July 21 or 22, 2004. Rhodes was afforded union representation during the interview and was advised of his

---

[3] 18 U.S.C. § 242 reads, in relevant part, "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both . . . ."

rights prior to the interview.

After the internal security investigation and the report of final investigation were complete, CBP determined that there were substantiated allegations of misconduct against Plaintiff.

**B.     Plaintiff's Allegations**

The allegations of Plaintiff's Amended Complaint are in dispute. By affidavit, Plaintiff attests that on July 21, 2004, he was working at the Rainbow Bridge performing inspections of pedestrians, buses, and tour vans entering the United States from Canada. (Plaintiff's Aff. (Docket No. 42), ¶ 4.) At approximately 11:00 p.m., a black male passed through Plaintiff's booth when another CBP Officer, Angelo Arcuri ("Arcuri") observed a bulge at the small of the man's back. Arcuri approached the man, patted down the area, and found an object taped to his back. Plaintiff assisted Arcuri in restraining the man, and pressed the "duress" button to summon assistance from other officers.  (Id., ¶¶  5-8.) Arcuri then brought to Plaintiff's attention three women standing outside the exit doors looking in, and directed Plaintiff to bring the women in for questioning. (Id., ¶ 9.) When Plaintiff approached the women and gestured them to come inside, they backed up and said, "no, no, no," and began to run away. (Id., ¶ 11.) Despite Plaintiff's yells to stop, the women continued to run, and Plaintiff pursued them on foot. (Id., ¶ 12.)

Plaintiff caught up with one of the women, later identified as Zhao, and attempted to grab her left arm, but she pulled away. According to Plaintiff, Zhao then began to scratch and kick him.  (Id., ¶ 13.) At that point, Plaintiff produced a can of pepper spray and discharged it once in Zhao's face in a 1-2 second burst. As he reached for Zhao's arm, she again began to hit and kick Plaintiff, who then discharged a second burst of pepper spray.

4

As Zhao continued to struggle with Plaintiff, Plaintiff attests that her hand "was getting close to my gun," so he "pushed her off center, whereupon I brushed against the building." (Id., ¶¶ 14-15.) Fellow CBP Officer Emmett Russell ("Russell"), assisting Plaintiff, picked up Zhao, brought her to the center of the walkway, and applied an "arm bar to bring her to the ground." At that point, Plaintiff observed the top of Zhao's head make contact with the ground. (Id., ¶ 16.) While her head was on the ground, Russell pulled Zhao's legs out to straighten them, and as a result, "her head slid along the concrete paving stones that constituted the walkway." (Id., ¶ 17.)

Plaintiff approached Zhao, and, to control her movements, placed his knee on the left side of her back. While Russell "got control of Ms. Zhao's right hand," a third CBP Officer, Amina Zinnerman ("Zinnerman") approached and attempted to control Zhao's left hand. (Id., ¶¶ 18-19.) At that point, Plaintiff "readjusted [his] knees" for the purposes of relieving pressure upon them to control Zhao's body. He then placed his hands on top of her head and one knee against her shoulder. (Id., ¶ 20.) Three times Zhao attempted to raise her head, and "each time" Plaintiff "took [her] head with both fists and pressed it back down, as I had been trained to do under such circumstances, because of the potential of the subject spitting on or biting an officer. . . ." (Id., ¶ 21.)

Zinnerman also continued to struggle with Zhao. When Zinnerman momentarily released Zhao's hand to produce her handcuffs, Zhao's hand immediately went beneath her body in the vicinity of her handbag, from which she retrieved a camera. Zhao opened the back of the camera to expose the film inside. (Id., ¶¶ 22-23.) Zinnerman again took hold of Zhao's left arm. According to Plaintiff, Russell then tapped his shoulder, saying,

"Rocky, stop,"[4] whereupon Plaintiff released Zhao's head and backed away. (Id., ¶ 23.) Officers were ultimately able to apply handcuffs to Zhao, and Zhao was led into the building. (Id., ¶ 25.)

Plaintiff attests that during the struggle, he, Russell, and Zinnerman repeatedly instructed Zhao to "stop resisting," and Zhao ignored those commands. (Id., ¶ 26.)

Plaintiff then reported the incident to his supervisor, SCBPO Mahady, and prepared a written statement detailing what occurred. Shortly thereafter, SSAs Mania and MacMartin arrived at approximately 1:00 a.m. and met with Mahady and Plaintiff. Mania observed a small cut on Plaintiff's right forearm. (Id., ¶¶ 27-29.)

At 7:30 a.m., Mania and MacMartin advised Plaintiff that he could leave without taking an additional statement from him. (Id., ¶ 30.)

Later, Plaintiff learned that the three women were taking photographs on the pedestrian walkway, a designated "no photograph" zone, near a defective entrance gate. Zhao, a Chinese national, had in her possession an expired visa. (Id., ¶¶ 32-35.) Although Zhao ran from and resisted CBP officers, she was released without charges. Id., ¶ 42.)

As of July 22, 2004, Plaintiff was suspended without pay from his job with DHS. According to Plaintiff, he was "singled out" for prosecution after Zhao initially accused several unnamed DHS officers of pepper spraying and kicking her repeatedly. (Id., ¶¶ 35-36.) Plaintiff avers that since he came out as openly gay in 1997, he has been the subject of harassment by supervisors and employees of DHS based on his sexual orientation, including discipline against him for "trivial and trumped up infractions." (Id., ¶ 37.) Prior to

---

[4] For purposes of clarification, Plaintiff was known to his colleagues by the nickname, "Rocky."

that, Plaintiff claims to have had an "exemplary" record. (Id.) As a result, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint regarding the alleged instances of harassment. (Id., ¶ 40.)

Plaintiff also contends that his prosecution was a result of Bush Administration "caving in" to pressure from the Chinese government, who had published several gruesome photographs of Zhao's injuries through its news agencies as evidence of the "barbarism" of the United States government. (Id., ¶ 41.) Also, that DHS and the United States Justice Department allegedly pressured DHS/CBP Officers to give inculpating testimony regarding Plaintiff. (Id., ¶¶ 45-46.)

Following Plaintiff's acquittal of the civil rights charge, Plaintiff was not reinstated to his employment with DHS, and OPR conducted an internal investigation regarding his conduct. (Id., ¶ 52.) On October 7, 2005, Plaintiff, accompanied by union representative Officer Kevin Feeley, attended an interview that Plaintiff characterizes as a "20 hour interrogation."[5] (Id., ¶¶ 52-56.) During the interview, Plaintiff states that he was "repeatedly threatened with criminal prosecution" by SSAs Mania and MacMartin for "obstructing their investigation," and then when he asked permission to speak with his attorney, the investigators refused. (Id., ¶¶ 58-61.)

## C.    The Defendants' Motion

Defendants have moved for dismissal of the Amended Complaint and/or for summary judgment on the grounds that: (1) Plaintiff's Amended Complaint fails to allege personal involvement of Defendant Tevens; (2) Plaintiff's seizure and detention did not

---

[5] The Court points out that the questioning spanned 20 hours over the course of three days. (Plaintiff's Ex. (Docket No. 42) AA at 1478.)

violate the Fourth Amendment; (3) Plaintiff's prosecution was instituted without malice; (4) legal process was not improperly used in Plaintiff's arrest and prosecution; (5) Plaintiff fails to state a Fifth Amendment right to counsel claim; (6) Plaintiff fails to state a claim for conspiracy; and (7) the Defendants are entitled to qualified immunity. (Defendants' Mem. (Docket No. 34) at 8-29.)

In response, Plaintiff argues that triable issues of fact exist as to whether the arrest warrant and grand jury indictment were obtained through a deliberate misrepresentation of facts, and whether there was probable cause for Plaintiff's arrest. Specifically, that: (1) the investigators pressured and/or coached the witnesses to provide inculpating testimony; (2) the investigators omitted exculpatory evidence from the investigative reports; (3) Zhao's testimony was not credible; (4) the witnesses' testimony regarding the incident was inconsistent; (5) Zhao's forehead injury was not caused by Plaintiff's actions; (6) Zhao and her companions were not fully investigated; and (6) investigators misrepresented the testimony of the witnesses in the criminal complaint. (Plaintiff's Stmt. of Facts (Docket No. 42), ¶¶ 82-93.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether

a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## B.   Bivens Actions

Bivens claims are judicially-created causes of action for money damages against federal actors who deprive individuals of constitutional rights. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 396–97 (1971); Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007). In large measure, Bivens claims are analogous to claims brought under 42 U.S.C. § 1983 against state actors and are governed by the same standards. See Hartman v. Moore, 547 U.S. 250, 255 n.2 (2006); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995).

To maintain a Bivens action, a plaintiff must allege two principal elements: first, that the defendant deprived him or her of a right secured by the Constitution; second, that the defendant acted under color of federal law. See Mahoney v. Nat'l Org. for Women, 681

9

F.Supp. 129, 132 (D. Conn. 1987) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155–56 (1978)). "A Bivens action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation." Cohen v. Holder, No. 11–CV–3, 2011 WL 809773, at *2 (E.D.N.Y. Mar. 1, 2011).

## C.    Plaintiff's Amended Complaint

### 1.    False Arrest/False Imprisonment

In the First Cause and Second Causes of Action, Plaintiff alleges that his seizure and detention violated the Fourth Amendment. (Am. Compl. ¶¶ 10-73.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated...." U.S. Const. Amend. IV. A Bivens claim for false arrest is based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause.[6] To state a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

"Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (citations omitted). A reviewing court should pay great deference

---

[6] For purposes of this case, there is no meaningful distinction between a claim for false arrest and false imprisonment. See Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest.") (citing 59 N.Y. Jur.2d False Imprisonment § 1).

to the determination of a neutral magistrate that probable cause existed to issue a warrant. United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993). The Second Circuit has held that for a plaintiff to prevail on a claim of false arrest where he was arrested pursuant to a validly-executed warrant, the plaintiff must show that the officer who submitted the probable cause affidavit, "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." Soares v. State of Conn., 8 F.3d 917, 920 (2d Cir. 1993) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)) (internal quotations omitted). See also Golino, 950 F.2d at 870-71. Absent such bad faith, an officer will be entitled to qualified immunity. Id.

In this case, Plaintiffs's arrest was made pursuant to a warrant signed by a magistrate judge based upon probable cause, (Defendants' Ex. (Docket No. 36) B, ¶ 13; B-3), and Plaintiff has not submitted evidence that MacMartin's affidavit in support of the criminal complaint and arrest warrant contained a false material statement.

Plaintiff claims that the Defendants chose not to investigate any other DHS employees, chose not to investigate exculpatory evidence, ignored/withheld exculpatory evidence, and credited Zhao's version of events without considering evidence "reflecting on and damaging the credibility of Zhao." (Am. Compl., ¶¶ 61-65.) As Defendants point out, none of these allegations relate specifically to MacMartin's affidavit in support of the criminal complaint, and Plaintiff presents no evidence to rebut the presumption of probable cause for Plaintiff's arrest warrant. It is well-settled that "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." See ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir.) (cert. denied, 552 U.S. 827 (2007).

Furthermore, Mania and MacMartin were not obligated to pursue every lead or engage in extensive fact-finding regarding the complainant's credibility. Although "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause," Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996), "the police are not obligated to pursue every lead that may yield evidence beneficial to the accused." Gisondi v. Town of Harrison, 72 N.Y.2d 280, 285 (1988); see also Zahrey v. City of New York, Civil Action No. 98-4546, 2009 WL 54495, at* 18 (S.D.N.Y. Jan. 7, 2009) ("[I]t is not the duty of the police or prosecutors ... to uncover exculpatory facts for the defendant.").

In this case, MacMartin's sworn affidavit outlined his investigation of Plaintiff, which consisted of interviewing CBP Officers Russell and Zinnerman, both of whom stated that they observed Plaintiff grab Zhao's hair and strike her head to the ground, throw her into a building, and strike her head with his knee. (Defendants' Ex. B, ¶¶ 8-9; B-3.) MacMartin's affidavit also described interviewing Zhao, who, through an interpreter, told MacMartin that she was kicked at least twice and struck repeatedly about the head. (Defendants' Ex. B, ¶ 10; B-3.) The affidavit also described Zhao's injuries, which included swollen eyes, a swollen forehead, bruises around the eyes, a contusion on her forehead, and a scraped knee. Even if the jury at Plaintiff's criminal trial ultimately did not credit Zhao's version of events,  it does not mean that a reasonable factfinder could infer that MacMartin failed to make a further inquiry that a reasonable person would have made. Stated somewhat differently, he did not deliberately overlook exculpatory evidence known to him, but merely declined to conduct a further investigation at that time. Once MacMartin had "a reasonable basis for believing there [was] probable cause, he [was] not required to explore and

12

eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). See also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (noting that "[a]lthough a better procedure may have been for the officers to investigate [the arrestee's] version of events more completely, the arresting officer does not have to prove [the arrestee's] version wrong before arresting him"); Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989) (noting that an officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.")

Accordingly, the Court finds that Plaintiff has not met the "heavy burden" of rebutting the presumption of probable cause on the basis that the criminal complaint contained false statements or material misrepresentations. Golino, 950 F.2d at 870-71.  Thus, because Plaintiff's arrest and detention were privileged, and Plaintiff has not shown otherwise, the Defendants are entitled to summary judgment on the First and Second Causes of Action alleging false arrest and imprisonment.[7]

**2.    Malicious Prosecution**

Plaintiff alleges malicious prosecution by Defendants in the Third Cause of Action of the Amended Complaint. (Am. Compl. ¶¶ 74-90.)

To state a Bivens claim for malicious prosecution, which also lies under the Fourth Amendment, a plaintiff must show that "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of

---

[7] In light of this Court's determination on these claims, there is no need to address Defendants' argument that Tevens lacked personal involvement in the alleged wrongful conduct. See, e.g., Reddick v. Lantz, No. 3:07cv1793, 2010 WL 1286992, at *6 (D.Conn. Mar.29, 2010) (In § 1983 action, "[a]bsent an underlying constitutional violation, there is no cognizable claim for supervisory liability.")

probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

On this record, Plaintiff fails to make a showing of the requisite third and fourth elements.

As with a claim of false arrest, the existence of probable cause is a complete defense to a claim of malicious prosecution. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995); Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995). "In evaluating probable cause to prosecute for the purposes of a malicious prosecution claim, the court evaluates the information available at the time the prosecution was initiated." Richards v. City of New York, No. 97 Civ. 7990, 2003 WL 21036365, at *15 (S.D.N.Y. May 7, 2003) (citing Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir.1994)). "[A]bsent intervening circumstances that could serve to 'dissipate' the original rationale for the arrest," where the crime for which the plaintiff had been arrested is the same as the crime for which the plaintiff is then prosecuted, the existence of probable cause for the arrest can presumptively demonstrate probable cause for the prosecution. Allen v. City of New York, 480 F.Supp.2d 689, 714-15 (S.D.N.Y. 2007).

As explained above, Mania and MacMartin had probable cause to arrest Plaintiff. Therefore, because there was probable cause to arrest, and because Plaintiff has not put forth evidence to suggest that Defendants became aware of different or exculpatory information after his arrest, but before his grand jury indictment, that would have diminished the original finding of probable cause, Plaintiff cannot establish a viable claim of malicious prosecution.

Additionally, a grand jury indictment creates a presumption of probable cause in a

14

claim for malicious prosecution. <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 82 (1983) A plaintiff can only rebut the indictment's presumption of probable cause by presenting evidence sufficient for a reasonable jury to find "'that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" <u>McClellan v. Smith</u>, 439 F.3d 137, 145 (2d Cir. 2006) (quoting <u>Colon v. City of New York</u>, 60 N.Y.2d at 83)) "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially [.]'" <u>Rothstein v. Carriere</u>, 373 F.3d 275, 284 (2d Cir. 2004) (quoting <u>Colon</u>, 60 N.Y.2d at 82)). Alternatively, the presumption "'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.'" <u>Richards</u>, 2003 WL 21036365, at *14 (quoting <u>Harris v. State</u>, 302 A.D.2d 716 (3rd Dept. 2003)).

Plaintiff avers that the grand jury indictment was produced by the Defendants' bad faith, on the basis that MacMartin materially misrepresented the testimony of the witnesses, and such testimony was "conflicting and false." (Plaintiff's Mem. (Docket No. 43) at 6.)

On July 22, 2004, Mania and MacMartin began their investigation of the incident involving Plaintiff and Zhao, which included interviewing several witnesses to the incident. CBP Officers Russell and Zinnerman, who were both involved in Zhao's apprehension, spoke with the investigators.

MacMartin's affidavit in support of the application for Plaintiff's arrest warrant states

15

that Russell saw Plaintiff throw Zhao against a building, grab Zhao by the hair and strike her in the head with his knee, and grab Zhao by the hair and strike her head against the ground. (Plaintiff's Ex. A, ¶ 9.) MacMartin goes on to state in the affidavit that Russell then pushed Plaintiff away, telling him to stop. (Id.) The information contained in the affidavit is consistent with Russell's interview taken on July 22, 2004, with the written statements that Russell provided to the Port Director in a memorandum dated July 22, 2004. and with his grand jury testimony. (Plaintiff's Ex. B, F, P.)

The affidavit also outlines the statements made by CBP Officer Zinnerman. Therein, MacMartin states that Zinnerman saw Plaintiff throw Zhao into the wall of a building, strike Zhao in the head with his knee three times, and grab Zhao's hair with both fists and strike her head to the ground twice. MacMartin then states that Zinnerman said she saw Russell strike Plaintiff on the shoulder and tell him to stop. Again, the affidavit is consistent with Zinnerman's interview transcript taken on July 22, 2004, with her written memorandum to the Port Director dated July 21, 2004, and with her grand jury testimony. (Plaintiff's Ex. C, G, Q.)

Further, Plaintiff's own affidavit in opposition to the Defendants' motion supports probable cause for his arrest and detention. Therein, Plaintiff admits that he "pushed [Zhao] off center, whereupon [he] brushed against the building," and that he "placed [his] knee on the left side of [Zhao's] back to control her movements. (Plaintiff's Aff., ¶¶ 15, 18.) Further, he states that he "readjusted his knee for the dual purpose of relieving pressure upon them to control Zhao Yan's body. [He] placed his hands on top of her head and one knee against her shoulder." (Id., ¶ 20.) According to Plaintiff, when Zhao attempted to raise her head three times, "each time [he] took her head with both fists and pressed it back

down." (Id., ¶ 21.) Finally, fellow Officer Russell "tapped [Plaintiff's] shoulder and said, 'Rocky, stop,' whereupon [he] let go of Ms. Zhao's head and backed away." (Id., ¶ 24.) Thus, Plaintiff's version of events is, in this Court's view, substantially similar to the accounts of both Russell and Zinnerman, and does not support his contention that the statements in the criminal complaint were materially misrepresented and/or false.

Similarly, Plaintiff alleges that the Defendants "knowingly permitted witnesses to testify falsely before a grand jury." (Plaintiff's Mem. at 5.) He does not, however,  set forth specific facts to rebut the presumption of probable cause by establishing that the indictment was produced by fraud, perjury, the suppression of evidence, or other police misconduct. An unsupported assertion that the witnesses knowingly offered inaccurate testimony is insufficient to establish perjury. See Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) (in malicious prosecution claim, a plaintiff is not permitted to establish bad faith, fraud, perjury, or suppression of evidence with "mere conjecture and surmise;" rather, he must put forth evidence sufficient for a reasonable jury to make such a finding). In any event, Plaintiff's allegation of false testimony is belied by the record as Zinnerman's and Russell's testimony at the grand jury was substantially similar or identical to their previous statements, with only minor variations in verbiage. Accordingly, Plaintiff has not alleged specific facts to rebut the presumption of probable cause supporting the grand jury indictment.

Additionally, Plaintiff does not establish that his prosecution was instituted with actual malice. "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice

17

served.'" <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996) (quoting <u>Nardelli</u> <u>v. Stamberg</u>, 44 N.Y.2d 500, 502-03 (1978)).

Plaintiff contends that in this case, actual malice may be inferred from a lack of probable cause for his arrest. (Plaintiff's Mem. at 7-8; Cohen Affirm., ¶¶115-116.) While it is true that malice may be inferred from a lack of probable cause, <u>see</u> <u>Lowth</u>, 82 F.3d at 573, this Court has previously determined that probable cause existed for Plaintiff's arrest and prosecution, and therefore malice cannot be inferred under these circumstances.

For these reasons, the Defendants are entitled to summary judgment on Plaintiff's Third Cause of Action alleging malicious prosecution.

### 3.    Abuse of Process

Plaintiff, in his Fourth Cause of Action, advances an abuse of process claim under the Fourth and Fifth Amendments.[8] (Am. Compl., ¶¶ 91-94.)

Under New York law, in order to prevail on a claim for malicious abuse of process, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." <u>Savino v. City of New York</u>, 331 F.3d at 76 (quoting <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir.1994)); <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 116 (1984).

Defendants have moved for summary judgment on the ground that Plaintiff has failed to establish the second and third elements required for an abuse of process claim:

---

[8] This Court notes that at least one district court in this Circuit has rejected a <u>Bivens</u> cause of action for abuse of process arising out of the 5th and 14th Amendment's due process protections. <u>See</u> <u>Williams v.</u> <u>Young</u>,769 F.Supp.2d 594 (S.D.N.Y. 2011).

intent to do harm without justification and a collateral objective. (Defendants' Mem. at 20.)

While Plaintiff contends that he was singled out for prosecution as a result of an "unofficial mandate to appease the government of the Peoples Republic of China and/or to unlawfully discriminate and unlawfully retaliate against a homosexual employee for filing a Civil Rights complaint against the Department of Homeland Security," (Am. Compl., ¶ 92), neither argument is supported by facts to establish that legal process was improperly used outside of the purpose for which the law created it. Rather, a claim will lie only if the defendant used the process to gain a "collateral advantage" not sanctioned by law such as extortion, blackmail or retribution, or to harass the plaintiff or coerce the plaintiff to give up a claim against the defendant. See 86 N.Y. Jur. Process and Papers § 159; Hauser v. Bartow, 273 N.Y. 370, 374 (1937); see also Dean v. Kochendorfer, 237 N.Y. 384 (1924) (distinguishing between improper purpose and improper motive). The process here, Plaintiff's arrest warrant, search warrant, and grand jury indictment, was issued and used for its intended purpose, namely, Plaintiff's arrest, search of his person, and civil rights charge. See Butler v. Ratner, 210 A.D.2d 691 (3rd Dept. 1994) ("Significantly, the falsity of the allegations and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process" where "the process was both issued . . . and used . . . for its intended purpose.") (internal citations omitted).

Plaintiff has submitted evidence, including newspaper stories "documenting the pressure put upon the U.S. Government" by the government of China to prosecute Plaintiff, and an affidavit by Andrew Ramirez, Chairman of the "Friends of the Border Patrol" law enforcement advocacy organization, in support of Plaintiff's contention that his prosecution was a result of overreach and/or foreign initiation. (Plaintiff's Ex. Y, Z.)  These documents

19

do not establish, however, that Defendants acted with an ulterior <u>purpose</u> or <u>objective</u>, but rather than with an improper <u>motive</u>, which is not actionable. <u>See</u> <u>Savino</u>, 331 F.3d at 77 ("the new York Court of Appeals has made clear that '[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'") (quoting <u>Curiano</u>, 63 N.Y.2d at 117).

Nor does the fact that Plaintiff was not reinstated to work following acquittal change the Court's determination on this issue. (Plaintiff's Mem. at 8; Cohen Affirm., ¶¶ 117-118.) Reading Plaintiff's arguments to suggest that his termination was the collateral objective of his arrest and prosecution, he nonetheless fails to establish the second prong of an abuse of process claim, because Plaintiff's arrest and prosecution were justified. <u>See</u> Discussion <u>supra</u> at III.C.1 & 2.

Conceding that direct proof of improper purpose and malice "is difficult to come by" in malicious prosecution and abuse of process cases, Plaintiff urges this Court to find that the absence of probable cause gives rise to an inference of the requisite elements. (Cohen Affirm. (Docket No. 42), ¶¶ 112-116.) However, because this Court has already determined that probable cause existed for Plaintiff's arrest and prosecution, there can be no inference of intent to harm and improper purpose, and therefore the invocation of process in Plaintiff's case was justifiable and entirely proper.

Accordingly, Defendants are entitled to summary judgment with respect to the Fourth Cause of Action.

### 4.    Fifth Amendment Claims

In the Fifth Cause of Action of the Amended Complaint, Plaintiff alleges a denial of his Fifth Amendment right to counsel and due process on the basis that, during an

administrative review following his acquittal, the Defendants denied him the opportunity to have his attorney represent him. (Am. Compl., ¶¶ 95-105.)

Assuming that there exists a <u>Bivens</u> remedy for a Fifth Amendment right to counsel and substantive due process deprivation, Plaintiff's claims fail as a matter of law.[9]

First, Plaintiff alleges that he was deprived of his right against self-incrimination and to counsel when he was interrogated by investigators without an attorney. The Fifth Amendment protects against the admissibility of incriminating statements obtained during custodial interrogation of a person who has not properly waived his right to counsel. <u>Nesbitt v. County of Nassau</u>, No. 05 CV 5513, 2006 WL 3511377 *2 n. 7 (E.D.N.Y. Dec, 6, 2006); <u>see</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The Fifth Amendment's self-incrimination clause bars the government from using a compelled confession in any criminal case. U.S. Const. Amend. V. However, "mere coercion does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case against the witness." <u>Chavez v. Martinez</u>, 538 U.S. 768 (2003).

Plaintiff's administrative interview took place after his trial and acquittal. The interview was conducted as part of a fact-finding internal security investigation by OPR for CBP to determine whether the misconduct allegations against Plaintiff were substantiated. Plaintiff was afforded union representation during the interview, and signed an acknowledgment of his right to have union representation pursuant to <u>NLRB v. J. Weingarten, Inc.</u>, 420 U.S. 251 (1975). (Defendants' Ex. B, ¶ 27; B-6; C, ¶ 9.) Plaintiff was

---

[9] <u>See</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (extending <u>Bivens</u> to a claim for employment discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause).

advised of and signed a <u>Kalkines</u> warning,[10] which provided that he could remain silent during the interview. (Defendants' Ex. B, ¶ 27; B-7.)

Here, the statements made by Plaintiff during the interview were never used in any criminal case against him, and this component of his Fifth Amendment claim fails on that basis alone.  <u>See</u> <u>Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998) ("a § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, <u>and the statements thereby obtained were used against the plaintiffs in a criminal proceeding</u>.") (emphasis added).[11]

Plaintiff alternatively argues that the conduct of the Defendants during the hearing gives rise to a violation of substantive due process: "The coercive and abusive conduct of the hearing, the threats of prosecution of both the Plaintiff and his union representative, the Defendant's refusal to permit Plaintiff to consult with his attorney . . . does not comport with traditional ideas of fair play and decency . . ." (Cohen Affirm., ¶ 128.)   To make out a violation of substantive due process, Plaintiff "must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" <u>Pena v. DePrisco</u>, 432 F.3d 98, 112 (2d Cir. 2005).

While investigators continuously reminded Plaintiff that untruthful and non-

---

[10] <u>See</u> <u>Kalkines v. U. S.</u>, 200 Ct.Cl. 570 (1973).

[11] A claim under <u>Bivens</u> is substantially similar to a claim under 42 U.S.C. § 1983, such that courts incorporate § 1983 case law into <u>Bivens</u> claims. <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995).

responsive answers could result in perjury and/or obstruction charges (Plaintiff's Ex. AH (Docket No. 45)),  nothing on this record rises to the level of conscious-shocking behavior. Other courts have held that interrogations that involve shouting, vulgar language, and threats, do not shock the conscious so long as the officer's conduct was not arbitrary and capricious or intended to inflict harm. See, e.g., Tinker v. Beasley, 429 F.3d 1324, 1328–29 (11th Cir. 2005) (police misconduct that violates another constitutional right does not necessarily meet substantive due process standard); Cunningham v. City of Wenatchee, 345 F.3d 802, 811–12 (9th Cir. 2003) (persistent questioning of daughters about sexual abuse despite their denials and including threats that they could not leave until they confirmed abuse were not so coercive as to violate substantive due process); Key v. Finks, No. 09CV00658, 2010 WL 3515720 at *5 (E.D. Ark. Sept.1, 2010) (questioning included vulgar language and threats); Smith v. Campbell, 545 F.Supp.2d 1218, 1223 (N.D. Fla. 2008) (interrogation lasted for six or seven hours; officers denied witness medication and threatened she would not see her son or the victim unless she confessed). Thus, investigatory conduct that includes coercive techniques does not offend substantive due process absent particularly egregious circumstances. Chavez, 538 U.S. at 773 (referring to "police torture or other abuse" as actionable under the due process clause); cf., Rochin v. California, 342 U.S. 165 (1952) (finding a conscience-shocking violation of substantive due process where police directed an emergency room doctor to extract against a suspect's will his stomach contents, which included heroin-filled capsules);  Harbury v. Deutch, 233 F.3d 596, 602 (D.C. Cir. 2000), rev'd on other grounds, 536 U.S. 403, 602 (2002) ("No one doubts that under Supreme Court precedent, interrogation by torture like that alleged by [the Plaintiff] shocks the conscience.")

Here, the conduct of SSAs Mania and MacMartin, even construed in the light most favorable to the Plaintiff, still does not meet the demanding standard of egregious behavior as contemplated by the Supreme Court in order to establish a substantive due process violation. For these reasons, this Court finds that summary judgment is appropriate for the Defendants on the Fifth Cause of Action alleging Fifth Amendment violations.

### 5.   Conspiracy

Plaintiff's Sixth and final Cause of Action involves allegations that the Defendants engaged in a conspiracy to violate Plaintiff's civil rights. (Am. Compl. ¶¶ 106-130.)

Plaintiff's claim fails as a matter of law.

To sustain a § 1983 conspiracy claim, a plaintiff must prove: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

First, Plaintiff has not established that Defendants violated his constitutional rights, as discussed at length throughout this Decision and Order. As such, his conspiracy claim is wholly deficient. "[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation." Mitchell v. Cnty. of Nassau, CV–05–4957, 2011 WL 1113767 (E.D.N.Y. Mar. 24, 2011) (citing Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).

Also problematic for Plaintiff is the "intraagency" or "intracorporate conspiracy doctrine," which posits that officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his employment, are legally incapable of conspiring together. See Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here

24

is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment."); see also Rini v. Zwirn, 886 F.Supp. 270, 291 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.") All of the Defendants named in this action are employees of a single entity, DHS, and, under these circumstances, a civil rights conspiracy claim is precluded.

Plaintiff argues that an exception to the intracorporate conspiracy doctrine applies here–where the individuals are motivated by an independent personal stake in achieving the corporation's objective. (Cohen Affirm., ¶¶ 129-130.) See Bond v. Board of Educ., No. 97 CV 1337, 1999 WL 151702, *1 (E.D.N.Y. Mar.17, 1999) ("'An exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.") accord, Tardd v. Brookhaven Nat. Laboratory, 407 F.Supp.2d 404, 414 (E.D.N.Y. 2006); Bhatia v. Yale University, No. 06cv1769,  2007 WL 2904205, at *2 (D. Conn. Sept. 30, 2007). ("An exception applies where the plaintiff can demonstrate the employees were acting in their personal interests, wholly and separately from the corporation."). Plaintiff presents no evidence, however, that Defendants were motivated by independent personal interests, separate and apart from the interests of DHS. Rather, he states in conclusory fashion that the Defendants sought to "further each of their careers by providing the government with a scapegoat by targeting for prosecution what they perceived to be a troublesome employee . . . ." (Cohen Affirm., ¶ 130.) Such an unsupported allegation will not defeat summary judgment.

Here, the Defendants are employed by a single entity, DHS, and Plaintiff has not raised a triable issue of fact as to whether the Defendants were acting outside the scope of their employment in a wholly personal capacity. Because the Defendants cannot be conspirators, Plaintiff's claim under Bivens fails as a matter of law, and the Defendants' motion for summary judgment is granted with respect to the Sixth Cause of Action.

### 6.    Qualified Immunity

Alternatively, Defendants seek dismissal of the Amended Complaint of the ground that Defendants are qualifiedly immune from liability for Plaintiff's claimed civil rights violations. (Defendants' Mem. at 27-29.)

Qualified immunity shields government officials who perform discretionary functions from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288 (2d Cir. 1990)

With regard to the first three Causes of Action, "the existence of probable cause affords an officer qualified immunity from liability, as it is an absolute defense to claims of false arrest, false imprisonment, or malicious prosecution." Lewis v. U.S., 388 F.Supp.2d 190 (S.D.N.Y. 2005). Here, the warrant pursuant to which Plaintiff was arrested was issued by a neutral magistrate, automatically inuring Defendants with qualified immunity. See Golino, 950 F.2d at 870. For Plaintiff to challenge that immunity, he would have to "make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" Id. This Court

has previously determined that Plaintiff has made no such showing.

Additionally, since this Court has concluded that no constitutional violations occurred with regard to Plaintiff's remaining claims, it is unnecessary to further address the issue of qualified immunity. See Vega v. Lareau, No. 04 Civ. 750, 2010 WL 2682307, at * 15 (N.D.N.Y.  Mar. 16, 2010); see also Freeman v. Goord, No. 02 Civ. 9033, 2005 WL 3333465, at *12 (S.D.N.Y. Dec. 7, 2005) ("Conduct that does not violate any constitutional right certainly does not violate a constitutional right that was 'clearly established' at the time the conduct occurred." (quoting Mozzochi v. Borde, 959 F.2d 1174, 1179 (2d Cir. 1992))).

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the Defendants are entitled to summary judgment in their favor, and the Amended Complaint is dismissed with prejudice.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment and/or DIsmissal (Docket No. 33)  is GRANTED in its entirety.

FURTHER, that the case is DISMISSED.

FUTHTER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.


Dated:   March 6, 2012
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court